UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| **Plaintiff,** | JUDGE |
| vs. | **INFORMATION** |
| GREGORY DAYNE GOTREAUX, | 18 U.S.C. § 1349 |
| **Defendant.** | 18 U.S.C. § 1957 |
| | **FORFEITURE ALLEGATION** |

**THE UNITED STATES ATTORNEY CHARGES:**

**INTRODUCTION**

At all times relevant to this Information:

*Department of Defense (DOD) Contracting Process*

1.      The United States Department of Defense (DOD) contracted through its various agencies, such as the Defense Logistics Agency (DLA).  DLA was the United States' combat logistics support agency, and as such managed the global supply chain for all military services, ten combatant commands, other federal agencies, and partner and allied nations.  DLA had three primary depots that manage the military's global supply chain – DLA Land and Maritime (L&M) in Columbus, Ohio, DLA Aviation in Richmond, Virginia, and DLA Troop Support (TS) in Philadelphia, Pennsylvania.

2.      When the DOD determined that a particular part was needed, the DOD issued "Solicitations," or Requests for Quotation (RFQs) electronically through a web-based application, DIBBS (DLA's Internet Bid Board System).  Users (potential contractors) could search for, view, and submit secure quotes based upon the RFQs for the items DLA sought to obtain.  The

1

solicitations (RFQ's) listed the DOD requirements, which could include specified manufacturers and part numbers, drawings and/or specifications such that any potential contractor is aware of exactly how the part is to be made or the approved source of the part.  Contracts, or purchase orders, issued by DLA are typically one of two types: "drawing" contracts or code and part contracts.  On a drawing contract, the contractor is required to manufacture a specific part in accordance with specifications identified by DLA in its solicitation and contract.  On a code and part contract, the contractor is required to provide DLA a specific part that was manufactured by an approved source, i.e., an exact product; DLA identifies the specific part and approved source(s) in its solicitation and contract.  DOD contractors were required to have a quality control system in place to ensure the parts supplied to the DOD are in accordance with DOD specifications.  This is especially important when a contract calls for a Critical Application Item (CAI).  CAIs are items on a U.S military weapon system that are essential to the weapon's performance, operation, and/or the preservation of life or safety of operating personnel.

3.      On code and part contracts, the contractor's bid for each contract contains the following notice, in part, regarding a contractor's representation that it will provide an exact product: "Any product not meeting these criteria is considered an alternate product even though it may be manufactured in accordance with the drawings and/or specifications…. (see DLAD 52.217-9002). To confirm the technical acceptability of your exact product quote, we may request documents (e.g., invoice, quote, agreement) to show traceability…. Failure to provide adequate traceability upon request may result in the rejection of your quote as technically unacceptable. Any indication that you have misrepresented the product offered shall result in the Government considering rescission of any resultant contract and all other sanctions, contract penalties, and remedies established under any other law or regulation."

2

4.  To conduct business with the DOD, contractors must register in the System for Award Management (SAM), provide an email address, and agree to receive payments electronically. The contractors must also obtain a Commercial and Government Entity (CAGE) code from the DLA. The CAGE code is a 5-character identification number that is used extensively within the federal government. The CAGE code relates to a variety of mechanized systems throughout the government and provides a standardized method of identifying a given contractor facility at a specific location.

5.  In the contracting process, once parts are shipped to the DLA, contractors enter the shipping and invoicing information electronically, through a secure, web-based system, which allows the government to receive and pay electronically. Upon receiving the invoice, which also represents that the contractor is providing goods in conformance with the contract requirements, the DOD, through the Defense Finance and Accounting Service (DFAS), located in Columbus, Ohio, within the Southern District of Ohio, issued electronic payment to the supplying contractor and retained a voucher as a record of the payment.

6.  DLA L&M in Columbus was also home to laboratories used to test and identify nonconforming parts sold to DLA, including the capability to test for counterfeit material, substitute inferior products, remark/over brand items, aftermarket and alternate products. These laboratories at DLA L&M were used to test all suspect parts provided to DLA worldwide.

*The Defendant and WM Industries*

7.  The defendant, **GREGORY DAYNE GOTREAUX** (hereinafter, "**GOTREAUX**"), resided in Beaumont, Texas.

8.  **GOTREAUX** was a managing member and co-owner of WM Industries, LLC, also doing business as Turbo Source, LLC, (hereinafter, "WM Industries") located in Beaumont, Texas.

3

On November 25, 2018, WM Industries was first registered in the SAM. WM Industries received a CAGE code, 87PR5, on December 24, 2018. Although the business name associated with this CAGE code changed multiple times in the SAM, the business will be collectively referred to as "WM Industries" throughout this Information.

## COUNT 1
(Wire Fraud Conspiracy)

9.      Paragraphs 1 – 8 of this Information are re-alleged and incorporated by reference as though set forth in full herein.

10.     Beginning in or about 2018 and continuing through in or about 2021, in the Southern District of Ohio and elsewhere, the defendant, **GOTREAUX**, knowingly conspired and agreed with P.H. to commit wire fraud, that is, to devise and intend to devise a scheme to defraud in order to deprive another, specifically, the DOD, of money and property by means of material misrepresentations and concealment of material facts, and for the purpose of executing the scheme, used wire communications in interstate commerce, in violation of 18 U.S.C. § 1343.

### The Object of the Conspiracy

11.     The object of the conspiracy was for the defendant and at least one other person, namely P.H., to unlawfully enrich themselves by providing the DOD and the United States Military nonconforming parts in response to at least 41 purchase/delivery orders awarded to WM Industries. As a result of **GOTREAUX's** conspiracy to defraud and to deprive another of money, the DOD suffered a loss of approximately $704,640.04.

### Manner and Means of the Conspiracy

12.     It was part of the scheme to defraud that:

        a.      **GOTREAUX**, with direction from P.H., quoted, or bid on, "code and part" contracts that required WM Industries to provide a specific part, often a CAI, that was

4

manufactured by an approved source as specified by DLA in the contract. In all 28 quotes, **GOTREAUX** represented and certified that he would provide the "exact product" as requested.

        b.      Rather than purchasing the required parts in accordance with the contractual terms, P.H. sourced nonconforming parts that **GOTREAUX** ordered and then provided to the DOD. On multiple occasions, **GOTREAUX** and P.H. conspired to purchase nonconforming parts from unapproved manufacturers.

        c.      **GOTREAUX** and P.H. provided false documentation to DLA on multiple purchase orders and delivery orders purporting that the parts provided by WM Industries were conforming parts. Specifically, **GOTREAUX** and P.H. prepared false and misleading quotations and invoices, often in response to DLA's requests for proof of traceability, that purported to show that the parts were conforming with the order.

        d.      To receive payment, **GOTREAUX** electronically invoiced DFAS, by means of wire communication in interstate commerce, representing that the parts were provided in accordance with the contract. DFAS electronically deposited payment for the delivered orders into the WM Industries bank account.

        **In violation of 18 U.S.C. § 1349.**

## COUNT 2
(Engaging in Monetary Transactions in Criminally Derived Property)

13.      Paragraphs 1 – 12 of this Information are re-alleged and incorporated by reference as though set forth in full herein.

14.      On or about May 6, 2021, in the Southern District of Ohio and elsewhere, the defendant, **GREGORY DAYNE GOTREAUX**, did knowingly engage and attempted to engage in a monetary transaction affecting interstate and foreign commerce involving criminally derived

property, to wit the withdrawal of $40,000 to purchase cashier's check #9030222000 from WM Industries' JPMorgan Chase account, which was subsequently deposited in a JPMorgan Chase account controlled soley by P.H. and his wife, and which was the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343.

**In violation of 18 U.S.C. § 1957.**


## FORFEITURE ALLEGATION

15. The allegations of this Information are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

16. Upon conviction of the offense alleged in Count 1 of the Information, in violation of 18 U.S.C. § 1349, Defendant **GREGORY DAYNE GOTREAUX** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to, a sum of money equal to $704,64.04 in United States currency.

17. Substitute Assets: If any of the forfeitable property described above, as a result of any act or omission of **GOTREAUX**:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated

by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **GOTREAUX** up to the value

of the forfeitable property.

> **Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

**KENNETH L. PARKER**
**UNITED STATES ATTORNEY**

**JESSICA W. KNIGHT, (0086015)**
**Assistant United States Attorney**